IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALBERTO RAMIRES,
        Petitioner,

v.                                              Case No.  3:11cv435/MW/CJK

SECRETARY OF FLORIDA
DEPARTMENT OF CORRECTIONS,
        Respondent.

_____

## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer (doc. 17), submitting relevant portions of the state court record (doc. 21).  Petitioner replied.  (Doc. 19).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged with one count of Capital Sexual Battery and four

counts of Lewd and Lascivious Molestation, in the Circuit Court for Escambia County, Florida, Case No. 07-334.  (Doc. 21, Ex. A and Ex. B, pp. 8-9).[1]  Following a jury trial (ex. C), petitioner was found guilty as charged.  (Ex. B, pp. 99-103).  Petitioner was adjudicated guilty and sentenced on November 9, 2007, to natural life without parole on the Capital Sexual Battery and to minimum mandatory 25-year terms of imprisonment on the Lewd and Lascivious Molestation counts, with all sentences running concurrently.  (Ex. B, pp. 109-117).  Petitioner appealed.  (*Id*., p. 122).  The appeal was assigned Case Number 1D07-6419.  Petitioner's appellate counsel filed an *Anders*[2] brief, asserting that no good faith argument could be made in the appeal.  (Ex. E).  Petitioner filed a *pro se* brief raising two issues:  (1) "The Trial Court Erred in Imposing Four (4) Twenty-Five Year Mandatory Minimum Enhancement Sentences for Lewd and Lascivious Molestation" and (2) "Appellant was Denied a Fair Trial Due to the Ineffective Assistance of Counsel".  (Ex. F). Petitioner's ineffective assistance claim asserted six errors – counsel's failure to file a motion for particulars, failure to prepare an adequate defense, failure to object to the charging information, failure to preserve for appellate review the prosecution's "Golden Rule" violation, failure to object to improper "repetitive" closing argument and failure to object to the illegal sentences imposed.  (Ex. F, p. 14).  The State was not required to serve an answer brief.  (Ex. G).  Petitioner's judgment of conviction was affirmed, per curiam and without written opinion, on April 13, 2009.  *Ramires v. State*,  9 So. 3d 620  (Fla. 1st DCA 2009) (Table) (copy at Ex. H).  Petitioner's motion for rehearing was denied on May 21, 2009.  (Ex. J).  The mandate issued on

---

[1]All references to exhibits are to those provided at Doc. 21, unless otherwise noted.

[2]*Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

June 8, 2009.  (Ex. K).

On September 26, 2009, petitioner filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. L).  On February 10, 2010, the trial court granted the motion in part and dismissed it in part.  The court granted relief to the extent it corrected a scrivener's error in the judgment, and dismissed without prejudice petitioner's remaining claims on the grounds that they should be brought in a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. M).  No appeal was taken.  (Ex. N).

While petitioner's Rule 3.800(a) proceeding was pending, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. O, pp. 1-39).  The motion was stricken on February 10, 2010, as facially insufficient, with leave to amend.  (*Id*., pp. 40-41).  Petitioner filed an amended Rule 3.850 motion on March 8, 2010, raising six claims.  (*Id*., pp. 42-61).  The postconviction court determined that three claims warranted an evidentiary hearing (claims two, three and four) and that petitioner was entitled to be resentenced.  (*Id*., pp. 103-06).  The court appointed petitioner counsel and set the matter for a combined postconviction evidentiary hearing and resentencing hearing.  (*Id*., pp. 105-06).  The combined hearing was held on October 20, 2010.  (*Id*., pp. 107-78).  The court granted petitioner's motion as to the incorrect imposition of minimum mandatory sentences on the Lewd and Lascivious Molestation counts, and denied relief in all other respects.  (*Id*., p. 203).  A corrected judgment and sentence was entered on October 22, 2010.  (*Id*., p. 183).  On December 10, 2010, the court entered an extensive written order finding that petitioner was entitled to be resentenced but was not entitled to any other relief on his postconviction claims.  (*Id*., pp. 192-228).

Petitioner filed a *pro se* brief on appeal, raising three issues. (Ex. P). The Florida First District Court of Appeal ("First DCA") summarily affirmed on June 8, 2011. *Ramires v. State*, 66 So. 3d 944 (Fla. 1st DCA 2011) (Table) (copy at Ex. R). The mandate issued August 18, 2011. (Ex. U).

On July 12, 2011, petitioner filed a state habeas petition alleging ineffective assistance of appellate counsel. (Ex. V). The First DCA denied relief. *Ramires v. State*, 68 So. 3d 918 (Fla. 1st DCA 2011) (copy at Ex. W). Petitioner's motion for rehearing was denied on September 13, 2011. (Ex. Y).

Petitioner filed his federal habeas petition in this Court on September 13, 2011. (Doc. 1, p. 1). Respondent asserts that petitioner is not entitled to federal habeas relief, because one of petitioner's claims (claim two) is not cognizable on federal habeas review, three of petitioner's claims (claims one, two and four) are procedurally defaulted, and all of petitioner's claims are without merit. (Doc. 17).

## LEGAL STANDARDS

### Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[3] thereby giving the state the "'opportunity to pass upon and correct'

---

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)   the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)   there is an absence of available State corrective process; or

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876

---

>         (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
> . . . .
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower*, 7 F.3d at 210. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115

S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review

in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court

case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the

merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record

reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

Ground One   Ineffective Assistance of Trial Counsel with Regard to State's Expert Witness Sarah Putters

During trial, after the State announced its intent to call Ms. Sarah Putters as a witness, defense counsel Mr. Wilkins requested a bench conference where the following exchange took place:

> MR. WILKINS: I don't think Ms. Putters was listed as a witness; was she?
>
> MS. PATTERSON [prosecutor]: Sure she was.
>
> MR. WILKINS: In discovery?
>
> MS. PATTERSON: Uh-huh.
>
> MR. WILKINS: Okay. And she's going to be testifying as?
>
> MS. PATTERSON: As an expert witness.
>
> MR. WILKINS: Pertaining to?

> MS. PATTERSON:  I told you this already, but I'll tell the judge, too. She did forensic sexual abuse exams.  She's retired.  She did it for CPT. And I'd present her to basically say what Dr. Walck saw, what he did was insufficient.  As far as sexual abuse, he couldn't tell us anything. He kind of already admitted that, but since I have her here, that's all. She's not – she doesn't know any specifics about this case.  She's just going to explain what a forensic – or what the kind of sexual battery exam she would do on children was like and also talk a little bit about physiology of that part of the body.

> MR. WILKINS:  Withdraw my objection.

(Ex. C, pp. 130-31).

Petitioner faults trial counsel for failing to seek to exclude, and failing to prepare for Putters' testimony.  Petitioner presents two alternative bases for his claim. On the one hand petitioner asserts that Ms. Putters <u>was not</u> disclosed as a witness and faults Mr. Wilkins for withdrawing his objection.  (Doc. 1, pp. 6-7).  On the other hand, petitioner asserts that Ms. Putters <u>was</u> disclosed as a witness and faults Mr. Wilkins for being unaware of the disclosure and for failing to depose Putters prior to trial.  (*Id*., p. 5).  Petitioner claims that had Wilkins deposed Putters, he would have learned the nature of her testimony and could have moved to exclude her testimony as irrelevant on the grounds that Putters was not familiar with the specifics of petitioner's case.  Petitioner explains that Ms. Putters gave her opinion as an expert that child victims of sexual abuse heal quickly and that 95% of the time children do not present any physical injuries, especially when a considerable period of time has elapsed between the date of the incident and the date of the medical examination. (*Id*., p. 7).  Petitioner claims Ms. Putters' testimony was prejudicial, because it allowed the jury to convict him based solely on the allegations of the child victim without any physical evidence.  Petitioner asserts he exhausted this claim by raising

it in his Rule 3.850 proceeding.  (*Id*., p. 6).

Respondent asserts a procedural default defense, arguing that although this allegation of ineffective assistance was raised in petitioner's Rule 3.850 motion as "Ground II", petitioner failed to raise the claim in his postconviction appeal.  (Doc. 17, pp. 7-8).  On appeal petitioner raised as "Point One" a purely state law procedural issue – that the circuit court abused its discretion at the postconviction evidentiary hearing when it prohibited petitioner from cross-examining Mr. Wilkins on the issue of Wilkins' failure to retain an expert to rebut Putters' testimony (finding that the line of questioning was outside the scope of petitioner's motion).  Respondent argues that the claim raised in petitioner's appellate brief was not the issue presented in his postconviction motion, was not a federal issue, and was not the issue petitioner now presents in his petition.  (Doc. 17, p. 10).

Petitioner replies that he properly exhausted his ineffective assistance claim in his postconviction appeal when he "raised a Chambers v. Mississippi, 93 S. Ct. 1038 (1973), Fourteenth Amendment due process claim" challenging the postconviction court's limitation of cross-examination of Wilkins.  (Doc. 19, p. 6 (*citing* Ex. P (petitioner's brief in postconviction appeal))).

As discussed previously, to properly exhaust a claim "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U. S. at 845.  In Florida, a defendant appealing the denial of a Rule 3.850 motion after an evidentiary hearing is required to file an appellate brief.  *See* Fla. R. App. P. 9.141(b)(3).  Failure to fully brief and argue an issue on appeal constitutes a waiver or abandonment of that issue. *See, e.g., Duest v. Dugger*, 555 So.2d 849, 851-52 (Fla.

1990) (holding that issues raised on appeal from order denying postconviction relief were procedurally barred where petitioner received an evidentiary hearing on his Rule 3.850 motion and failed to fully brief and argue the points on appeal; "The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues. . . ."). Petitioner received an evidentiary hearing, so he was required to raise and fully address the merits of any issues he wished to preserve for appellate review.

Petitioner's postconviction appellate brief raised the following issue as "Point One": "The Trial Court Abused Its Discretion in Not Permitting Appellant to Question Appellant's Counsel and Build a Record on Claim 2 of Petitioner's Motion". (Ex. P, p. ii and p. 14). Petitioner's summary of the argument on "Point One" provided: "Appellant will argue that the trial court erred by abusing its discretion in finding that Appellant Counsel's inquiry into whether Trial Counsel erred in not procuring an expert witness from Sarah Putters' testimony was outside the scope of the Motion. While Appellant shall concede that his Motion may have been inartfully pled, Appellant did allege this sub-claim within the body of his Motion, therefore, Counsel's inquiry was relevant." (Ex. P, p. 13). In the body of petitioner's brief, petitioner argued as "Point One" that the circuit court erred when it did not allow petitioner's postconviction counsel to question Mr. Wilkins as to why he failed to retain an expert to rebut Putters' testimony. (*Id*., pp. 14-15). Petitioner claimed that the lower court's limitation on cross-examination deprived him of his right to a full and fair hearing in violation of *Roberts v. State*, 840 So. 2d 962, 968 (Fla. 2002), and further deprived him of his constitutional right to confront and cross-

examine witnesses in violation of *Keeney v. Tamayo Reyes*, 504 U.S. 1 and n.5 (1992), and *Chambers v. Mississippi*, 410 U.S. 284, 289-90 n. 3 (1973). (*See* Ex. P. pp. 15-16). The facts petitioner presented to support "Point One" were confined to the cross-examination of Mr. Wilkins at the postconviction evidentiary hearing and the trial court's ruling that the issue of Wilkins' failure to retain a defense expert was beyond the scope of petitioner's motion. Petitioner did not present the facts, or argue the substance of his underlying ineffective assistance claim, nor did petitioner argue that the lower court erred when it ruled that he failed to establish deficient performance and prejudice under *Strickland*. Petitioner's final sentence asserted: "Because the trial court did not permit Counsel to explore this claim, error is automatic." (Ex. P. p. 16).

The only reported case confronting the question here – how far a petitioner can stray in his postconviction appeal before his appellate claim is considered different from his underlying postconviction claim (and federal habeas claim) – is *Henry v. Dep't of Corr.*, 197 F.3d 1361, 1367-68 (11th Cir. 1999). In *Henry*, the petitioner raised two claims of ineffective assistance of trial counsel in his Rule 3.850 motion. On appeal, Henry characterized the issue solely as whether the lower court erred in denying his motion without an evidentiary hearing. *Id*. at 1363, 1367. Henry presented facts and cited law relevant to the substance of his ineffective assistance claims. *Id.* at 1363, 1367. Henry's federal habeas petition raised the same ineffective assistance allegations as the Rule 3.850 motion, and the district court found those claims procedurally defaulted because Henry failed to exhaust them in state court. *Id*. The Eleventh Circuit emphasized that "[t]he essence of the exhaustion requirement is that a petitioner's constitutional claims be 'fairly presented' to the state

courts such that they have 'an opportunity to apply controlling legal principles to the facts bearing upon them.'" *Id.* at 1366 (*quoting Picard*, 404 U.S. at 275, 277, 92 S. Ct. at 512, 513). The court explained that "[t]he exact presentation of the claims in the state and federal courts may vary some", but that "[t]he difference between the two presentations may . . . become significant where legal theories underlying the state and federal claims . . . arise under different federal constitutional provisions". *Id.* (*citing* 2 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 23.3c, at 891-92 (3d ed. 1998)). The *Henry* Court determined that Henry's two presentations of his ineffective assistance claims differed only in form and not in substance. The court explained:

> As a general matter, we think that a request for an evidentiary hearing on ineffective-assistance-of-counsel claims is plainly enough an argument that the petitioner has evidence to show his entitlement to a new trial.
>
> . . . .
>
> Nevertheless, we recognize that if state procedure explicitly demanded more of a petitioner, a request for a hearing might not be enough. Florida's rule, however, makes no such demand. Under Rule 3.850, it is the trial judge who determines how much procedural attention a petition warrants. *See* Fla. R. Crim. P. 3.850(d). Henry's state-court appeal, which requested only the evidentiary hearing denied by the trial judge, was therefore appropriately modest. It asked for the most he could reasonably have expected from the appeals court – an order vacating and remanding for an evidentiary hearing. Exhaustion should not be construed to mandate more.

*Id.* at 1368-69. The court held that the difference between a request for an evidentiary hearing in state court and a request for more substantial relief in federal court, both premised on the same constitutional claim, "d[id] not vary significantly" and

constituted fair presentation of the constitutional claim. *Id.* at 1368.

In *Galin v. Sec'y, Dep't of Corr.*, 479 F. App'x 938, 940 (11th Cir. 2012), the Eleventh Circuit applied *Henry* to conclude that a federal habeas petitioner properly exhausted his ineffective assistance claims in state court when he presented them in his Rule 3.850 motion and, on appeal, alleged error in the postconviction court's failure to hold an evidentiary hearing. *Id.* at 940. The court in *Galin* reasoned: "Our holding in *Henry* makes clear that failure to raise substantive arguments when appealing a Florida court's denial of an evidentiary hearing on a Rule 3.850 motion does not render a claim unexhausted." *Galin*, 479 F. App'x at 940 (*citing Henry* at 1367-68).

Unlike *Henry* and *Galin*, the ineffective assistance claim presented in petitioner's Rule 3.850 motion (and federal habeas petition) varies significantly from the due process and confrontation clause claim petitioner presented in his postconviction appeal. The change in petitioner's argument was not a mere change in form or procedural relief sought, petitioner's argument on appeal involved an entirely different factual basis and legal basis. Petitioner did not fairly present the postconviction appellate court with the substance of his claim that Mr. Wilkins was ineffective for failing to prepare for Putters' testimony. Petitioner presented the appellate court with a due process/confrontation clause claim concerning the circuit court's limitation of cross-examination at the postconviction evidentiary hearing. Petitioner's failure to invoke the state court's established appellate review process on his present ineffective assistance claim renders the claim procedurally defaulted on federal habeas review. *See Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006) (holding that petitioner, who had received an evidentiary hearing on his Rule 3.850

motion, procedurally defaulted his ineffective assistance claim when he failed to argue it in his initial brief on appeal from the denial order and therefore abandoned it); *Cortes v. Gladish*, 216 F. App'x 897, 899-900 (11th Cir. 2007) (stating that had the petitioner received an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief would constitute a waiver of those issues, and they would be considered procedurally defaulted). Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default of Ground One bars federal habeas review of the claim.

Even if the Court rejected respondent's procedural default defense and found that petitioner properly exhausted his ineffective assistance claim, petitioner would not be entitled to federal habeas relief.

A.     Clearly Established Federal Law

In *Strickland v. Washington*, the Supreme Court set out a two-part inquiry for ineffective assistance claims. A petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Strickland*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177

F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. The *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

B.     Federal Review of State Court Decision

Petitioner raised, as "Ground II" of his Rule 3.850 motion, the claim that counsel was ineffective for "failing to depose pretrial and object at trial the testimony of State expert witness Sarah Putters". (Ex. O, pp. 50-52). The state court appointed counsel to represent petitioner and held an evidentiary hearing. (*Id*., pp. 107-79). At the close of the hearing the state court stated:

> In this case, and I'm not going to go into great detail because there will be an order that follows. but, in listening to everything, as in most of these cases, the issue is credibility and in trying to determine someone's take on how they testify and what they mean. And while I certainly understand Mr. Ramires' testimony, I do find Mr. Wilkins in the specifics and in the nuances to be credible. And therefore, as it relates to Counts 2, 3, and 4, it will be denied.
>
> . . . I will give an order that is in greater depth.

(Ex. O, pp. 167-68).  On December 10, 2010, the state court issued an extensive written order denying relief on petitioner's ineffective assistance claims.  The state court's written order correctly identifies *Strickland* as the controlling legal standard, (ex. O, pp. 197, 196), and denies relief after concluding petitioner failed to meet his burden under *Strickland*.  The order provides as follows:

> ### Ground two:  State's Expert witness
>
> ### Failure to Depose
>
> Defendant alleges in this claim that had counsel deposed the State's expert, "he would have found her expertise lacking and taken the proper steps to disqualify."  Defendant also alleges that a deposition would have given counsel information so that he could "do an independent examination of the facts and conduct further research."  Defendant specifically objects to Ms. Putters' unchallenged assertion that "95% of child sexual abuse victims present no physical signs of that abuse."
>
> This claim is, in part, facially insufficient because Defendant fails to give any basis for his assertion that the State's expert lacked the proper expertise or why she could not be qualified as an expert.
>
> The Court heard testimony regarding this claim at the evidentiary hearing convened in this cause.  At the hearing, counsel testified that he had known that the State would call this witness, and he was aware of the basics of the testimony she would give because he was familiar with the expert's work in other cases.  Counsel testified that, in his opinion, a deposition of the expert was not necessary.  Counsel also testified that based on the large amount of evidence that the State had against Defendant and the fact that the State's expert and the defense expert essentially testified to the same thing, no further challenge to the State's expert's testimony was necessary or would have been helpful to defendant's case.  At the evidentiary hearing, the Court specifically found counsel's testimony to be credible.

Additionally, Defendant has failed to prove that counsel's failure prejudiced him. Both the defense expert and the State's expert testified that even had the child sustained physical signs of trauma, such signs would likely have healed in the time that had elapsed between the alleged attack and the examination of the child. The statistic regarding the number of sexual abuse victims to show physical injury, then, cannot be shown to have affected the jury verdict. The Court does not find that Defendant is entitled to relief on this claim.

## Failure to Question Expert Properly

Defendant next alleges that when the State failed to adduce Ms. Putters' qualifications, counsel should have objected and conducted a voir dire of Ms. Putters' qualifications and the "facts and data underlying her opinions."

Ms. Putters' qualifications were made a part of the court record. The Defendant fails to allege what facts, data, or additional information he expected counsel to adduce that would have made any difference in the outcome of the trial. This allegation, therefore, is facially insufficient and cannot entitle Defendant to relief.

(Ex. O, pp. 193, 198) (footnotes citing to evidentiary hearing transcript and trial transcript omitted). The First DCA summarily affirmed. (Ex. R).

The state court's rejection of petitioner's claim was not "contrary to" clearly established federal law, because the state court applied the appropriate standard as identified by the Supreme Court in *Strickland*, 466 U.S. 668 (1984). There is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state court.

In evaluating whether the state court's rejection of petitioner's claim was an "unreasonable application" of *Strickland*, or based on an unreasonable determination of the facts, this Court's review is limited to the record that was before the state court.

*Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011). The state court record contained, among other documents, the trial transcript, the State's amended discovery exhibit and the Rule 3.850 evidentiary hearing transcript. The only testimonial evidence presented at the evidentiary hearing was petitioner's testimony and trial counsel John Wilkins' testimony. (Ex. O). The state postconviction court credited Mr. Wilkins' testimony and found petitioner's testimony not credible. The state court's findings of fact, including its credibility determinations, are presumed correct. 28 U.S.C. § 2254(e); *see also Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'") (*quoting Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983)); *see also Consalvo*, 664 F.3d at 845 ("We consider questions about the credibility and demeanor of a witness to be questions of fact."). Petitioner has not rebutted the presumption of correctness with clear and convincing evidence to the contrary, and has not shown that the state court's findings are unreasonable.

As to petitioner's contention that counsel was ineffective for failing to object to Putters' testimony on the grounds that it was not noticed, the record establishes that Wilkins could not object on that basis, because the State's amended discovery exhibit dated October 2, 2007, disclosed Sarah Putters as a witness. (Ex. O, pp. 130, 235). The State questioned Mr. Wilkins at the evidentiary hearing about his knowledge of and preparation for Ms. Putters' testimony:

Q [Ms. Patterson for the State]. Okay. Now, regarding the testimony of

Sally Putters. The – I believe you take no issue that the State had noticed you three weeks or so before the trial of its intent to offer Sally Putters. Did you know Sally Putters?

A [Mr. Wilkins]. Yes, ma'am. I knew of her and I believe I've had her in other sexual oriented-type cases.

Q. Okay. And did you know what she was going to testify to, in general, based on your experience with her?

A. Yes, ma'am.

Q. Okay. And when she was called as a witness and you approached the bench to ask whether the State had listed this witness –

A. Yes, ma'am.

Q. – and when it was pointed out. What was that all about? What was that whole –

A. Well, I knew –

Q. – that – I might point out – I'm sorry to interrupt, happened in front of the jury.

A. I knew that Ms. Putters was, in all likelihood, I did not know for a fact, but based on my prior experience with Ms. Putters and in talking to other criminal defense attorneys about Ms. Putters and what she does, I had a fair guess that she was going to basically rebut my expert's testimony and give a – by the – give a reasonable explanation as to why there were no physical injuries that were present on the child.

And frankly, part of what I do as a criminal defense attorney is legal, in a legal vein. But also, part of what I do in front of a jury during a criminal defense, during a trial is, could be classified as bravado or theatrics.

If I can – if I can have a jury not ["]be sympathetic["] toward my position because that would be improper[,] [b]ut if I could have a jury begin to question the State's case or the State's motives for calling a particular witness, then I think that's fair game. And I think that that's exactly what I was trying to do at that point in time. I knew what she was going to say.

Q. Well, and as it turned out, in fact, she said not much different than your own witness at cross examination; isn't that correct?

A. The essence of her testimony was essentially the essence of my doctor's testimony.

Q. On cross examination?

A. Yes.

Q. Not that you offered him, but that the facts were that on cross examination, what your doctor said and what Sally Putters ultimately said were very similar?

A. Yes, ma'am. The only difference would be that the State, you, were eliciting her, you know, the same type of testimony only in a more arguably favorable light for the State.

(Ex. O, pp. 135-38). When Mr. Wilkins was asked if he thought deposing Ms. Putters would have had any effect on his trial strategy or effectiveness at trial, Wilkins responded:

I don't think that Sally Putters' testimony had any bearing on this case when I had two eyewitness victims, an eyewitness cousin that was in the same room with one of the victims and Mr. Ramires, and with the mother's testimony testifying that there were numerous occasions that Mr. Ramires was alone with at least one, if not both of the children, there would have been no difference whatsoever.

(*Id.*, pp. 146-47). On cross-examination by petitioner's counsel, Mr. Wilkins re-

affirmed that he <u>did</u> know Ms. Putters was going to be called as a witness because he saw her name in the State's disclosures, and that he did have an idea of what her testimony would be.  (*Id*., p. 147).  On re-direct, Mr. Wilkins testified as follows:

> Q [Ms. Patterson].  Isn't that, in fact, a commonly accepted medical fact that child – this part of the – children's genitals heal quickly?
>
> A.  [Mr. Wilkins].  Yes.  It's not one I like to agree –
>
> Q.  You may not like it.  But have you ever heard a doctor say anything differently?
>
> A.  No, ma'am.
>
> Q.  And have you ever heard a doctor or anyone else rebut the statistic that ninety-five percent of children allegedly sexually abused do not show physical signs?
>
> A.  No, I've never heard anybody rebut that.
>
> Q.  All right.  So the likelihood of you finding an expert to rebut these two commonly held accepted medical beliefs, do you feel like that you were deficient in your representation of Mr. Ramires based upon that?
>
> A.  No, ma'am.

(Ex. O, p. 154).  Based on the state court's findings and in light of Mr. Wilkins' testimony which the state court credited, it was not unreasonable for the state court to find that Mr. Wilkins knew Ms. Putters would be called as a witness; that Wilkins knew the substance of Putters' testimony; and that Wilkins knew of no expert witness who could rebut Putters' testimony.  Given these facts, it was reasonable for the state court to conclude that Mr. Wilkins' failure to depose Putters was not unreasonable, and that petitioner failed to show he was prejudiced by Wilkins' decision not to

depose her. Petitioner also failed to establish that Wilkins had a viable basis to object to Putters' testimony based on relevance. The fact that Putters did not examine the victim or review the records of the victim's physical examination(s) did not render her testimony irrelevant.

The state court's rejection of petitioner's ineffective assistance claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two        <u>Violation of Due Process When Postconviction Court Denied Some of the Claims Raised in Petitioner's Amended Motion for Postconviction Relief as Facially Insufficient Without Providing Petitioner Opportunity to Further Amend the Claims.</u>

Petitioner claims "the procedures followed by the State courts were unconstitutional and violated [petitioner's] right to due process." (Doc. 1, p. 10). In support of this claim, petitioner alleges that the state court denied some of the claims and sub-claims of his amended Rule 3.850 motion as "facially insufficient" or "insufficiently pled". (*Id.*, p. 9). Petitioner claims "that his right to due process was violated when the postconviction court abused its discretion by not allowing Petitioner to amend and correct the deficiencies of these grounds for the court to rule on their merits. . . ." (*Id.*, pp. 9-10). Petitioner asserts that he exhausted this claim "under ineffective assistance of counsel (Fla. R. Crim. P, 3.850)." (*Id.*, p. 10).

Respondent argues that petitioner's claim presents a purely state law issue and is not cognizable on federal habeas review. (Doc. 17, p. 25). Respondent also asserts that petitioner did not properly exhaust this claim because, although petitioner argued the issue in his postconviction appeal, he failed to present the issue as one of federal constitutional dimension. (*Id.*, pp. 7, 25).

Petitioner's challenge to the process afforded him in the state postconviction proceeding does not state a plausible basis to grant federal habeas relief, because the claim represents an attack on a proceeding collateral to petitioner's confinement and not the confinement itself. *Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1326 (11th Cir. 2010) (holding that habeas petitioner's challenge to his state postconviction proceeding – the state court's ruling that he waived his state collateral proceedings – was not cognizable on federal habeas review); *Carroll v. Sec'y, DOC, Fla. Attorney Gen.*, 574 F.3d 1354, 1366 (11th Cir. 2009) (holding that habeas petitioner's claim that the state court violated his due process rights when it summarily denied his postconviction claim without an evidentiary hearing, did not state a claim on which federal habeas relief could be granted); *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (explaining that "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that habeas petitioner's claim that errors in his Rule 3.850 proceeding violated his due process rights did not state a basis for habeas relief because the claim "[went] to issues unrelated to the cause of petitioner's detention."). As the Eleventh Circuit explained in *Alston*:

> Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004); *see also Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), *cert. denied*, — U.S. —, 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009). There is a valid reason behind this principle: "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment – i.e., the conviction itself – and thus habeas relief is not an appropriate remedy." *Carroll*, 574 F.3d at 1365. Furthermore, such

challenges often involve issues of state law, and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

*Id*. at 1325-26.

Petitioner argues in his reply that the Florida Supreme Court's decision in *Spera v. State*, 971 So.2d 754 (Fla. 2007), created a liberty interest in his being allowed to further amend his amended postconviction motion. Even if *Spera* created a liberty interest, which it did not, the circuit court in petitioner's case did not violate *Spera*. *Spera* held that in dismissing a first postconviction motion based on a pleading deficiency, a court abuses its discretion in failing to allow the defendant at least <u>one</u> opportunity to correct the deficiency unless the deficiency cannot be corrected. *Id*. at 761. The circuit court in this case complied with *Spera* when it allowed petitioner an opportunity to amend his original motion. After petitioner filed his amended motion, he did not seek further amendment. *Spera* did not require the circuit court to allow further amendment *sua sponte*.

Petitioner's Ground Two provides no basis for federal habeas relief, and should be denied.

<u>Ground Three</u>  <u>Ineffective Assistance of Trial Counsel for Affirmatively Misadvising Petitioner to Reject a Favorable Plea Offered by the State.</u>

Petitioner claims trial counsel was ineffective for advising him to reject a ten-year plea offer. (Doc. 1, pp. 11-14). Respondent asserts that this claim was presented to the state courts in petitioner's Rule 3.850 proceeding and rejected on the merits. Respondent argues that the state court's denial of relief was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not

based on an unreasonable determination of the facts. (Doc. 17, pp. 25-28). Petitioner replies that "the adjudication on merits by the state court was not contrary to, or an unreasonable application of <u>Strickland</u>, thus, Petitioner is not entitled to habeas review. The Petitioner agrees with the Respondent and would withdraw this ground." (Doc. 19, p. 9).

In light of petitioner's withdrawal/abandonment of Ground Three, federal habeas relief should be denied.

<u>Ground Four</u>    <u>Ineffective Assistance of Appellate Counsel for Failing to Raise Claim of Ineffective Assistance of Trial Counsel.</u>

Petitioner's final ground for relief is that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal; namely, trial counsel's failure to object to the competency of a child witness (the victim's sister) and failure to move for a competency determination. (Doc. 1, pp. 14-16). Petitioner asserts he exhausted this claim by presenting it in his petition filed under Rule 9.141(c) of the Florida Rules of Appellate Procedure. (Doc. 1, p. 16). Petitioner asserts that the First DCA "issued a silent per curiam affirmed decision, but never reached the merits of the petition; therefore, this Court shall not give any deference to the findings made by the State court and shall find Appellate counsel ineffective and in violation of the constitutional rights of Petitioner." (*Id.*).

Respondent argues that this claim is procedurally defaulted, because the First DCA rejected it on the independent and adequate state ground of procedural bar – petitioner's failure to comply with Florida's two-year time limit for filing a petition asserting ineffective assistance of appellate counsel. (Doc. 17, pp. 10-11, 28-29).

Petitioner replies that his petition was not untimely, because it was filed within two years of his <u>corrected</u> judgment and sentence becoming final. (Doc. 19, pp. 9-

10).

The First DCA did not issue a silent per curiam affirmance, as petitioner asserts.  The First DCA issued the following written opinion:  "DENIED.  <u>See</u> Fla. R. App. P. 9.141."  *Ramires v. State*, 68 So. 3d 918 (Fla. 1st DCA 2011) (copy at Ex. W).  Rule 9.141(d) of the Florida Rules of Appellate Procedure sets forth the procedural requirements for petitions alleging ineffective assistance of appellate counsel, including the time limits for filing a petition:

> A petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel.  In no case shall a petition alleging ineffective assistance of appellate counsel on direct review be filed more than 4 years after the judgment and sentence become final on direct review.

Fla. R. App. P. 9.141(d)(5).  By citing to Rule 9.141, the First DCA clearly and expressly stated that it was relying on a state procedural rule to resolve petitioner's claim. The state court's decision on the procedural issue rested entirely on state law grounds and was not intertwined with an interpretation of federal law.   The time limits set forth in Fla. R. App. P. 9.141 are firmly established and regularly followed, and were not applied in an arbitrary or unprecedented fashion.   The mandate in petitioner's direct appeal issued on June 8, 2009.  (Ex. K).  Petitioner's petition alleging ineffective assistance of appellate counsel was filed on July 12, 2011, more than two years after the mandate.  It was not arbitrary for the First DCA to find petitioner's petition untimely notwithstanding his resentencing and the entry of a corrected judgment and sentence, because petitioner's petition raised an issue that existed at the time of the direct appeal from the 2009 final judgment.  As petitioner's

claim was presented in state court and rejected on the independent and adequate state ground of procedural bar, the claim is procedurally defaulted for federal habeas purposes. Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review of Ground Four.

Even if this Court were to review petitioner's claim *de novo*, petitioner would not be entitled to relief because his claim is without merit. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Claims alleging ineffective assistance of appellate counsel are governed by the *Strickland* standard. *See Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (holding that the *Strickland* standard applies to claims alleging ineffective assistance of appellate counsel). Petitioner cannot establish deficient performance or prejudice under *Strickland*. Florida law is well settled that claims of ineffective assistance of trial counsel are not, except under limited circumstances, cognizable on direct appeal. *State v. Barber*, 301 So. 2d 7, 9 (Fla. 1974) ("As to whether the issue of adequacy of representation can be raised for the first time on appeal, we hold that it cannot properly be raised for the first time on direct appeal, since, as was recognized in [*Chester v. State*, 276 So.2d 76 (Fla. 2d DCA 1973) ], 'it is a matter that has not previously been ruled upon by the trial court.' An appellate court must confine itself to a review of only those questions which were before the trial court and upon which a ruling adverse to the appealing party was made."); *see also Wuornos v. State*, 676 So.2d 972, 974 (Fla. 1996) (ineffective assistance of counsel claim not cognizable on direct appeal, only by collateral challenge); *Johnston v. State*, 841 So.2d 349 (Fla. 2003) (claim that trial counsel was ineffective should have been raised in postconviction proceeding).

Additionally, under Florida law the proper procedural vehicle for an ineffective assistance of trial counsel claim is a Rule 3.850 motion. *See Blanco v. Wainwright*, 507 So. 2d 1377, 1384 (Fla.1987) ("A proper and more effective remedy is already available for ineffective assistance of trial counsel under rule 3.850."); *Barber*, 301 So. 2d at 9 ("3.850 provides a means by which this issue may properly be resolved in a correct procedural setting in the trial court where evidence may be taken.").

Although there are "rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue" *Blanco*, 507 So.2d at 1384, the existence of "rare exceptions" does not render appellate counsel's failure to raise issues of ineffective assistance of trial counsel deficient performance. *See Blanco*, 507 So.2d at 1384 ("A proper and more effective remedy is already available for ineffective assistance of trial counsel under rule 3.850. If the issue is raised on direct appeal, it will not be cognizable on collateral review. Appellate counsel cannot be faulted for preserving the more effective remedy and eschewing the less effective."). Petitioner fails to show that appellate counsel's failure to raise the issue of ineffective assistance of trial counsel was a decision that no competent counsel would have made. *See Ballard v. McNeil*, 785 F. Supp. 2d 1299, 1327-1328 (N.D. Fla. 2011) (rejecting ineffective assistance of appellate counsel claim on the same basis).

Petitioner also fails to establish prejudice. Petitioner was permitted to file a *pro se* brief on direct appeal. Petitioner filed a brief and raised several instances of trial counsel's ineffectiveness. Petitioner did not present the claim he now faults appellate counsel for failing to raise. Petitioner fails to connect his failure to raise the claim to any conduct by appellate counsel. Another reason petitioner cannot establish

prejudice is because, as discussed above, collateral review was the more effective remedy for raising claims of ineffective assistance of trial counsel.

Petitioner is not entitled to federal habeas relief on Ground Four, and relief should be denied.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the

judgment of conviction and sentence in *State of Florida v. Alberto Ramires* in the Circuit Court for Escambia County, Florida, Case No. 07-334, be DENIED, and the Clerk be directed to close the file.

    2. That a certificate of appealability be DENIED.

    At Pensacola, Florida this 16th day of May, 2013.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).